Dwayne Turner was sentenced to prison for life without parole for a crime he committed when he was 19 after the jury deadlocked over whether to recommend a life sentence to the mitigating psychological test. Counsel, when did the murder conviction become final in state court? Originally in 1997. You say originally. Was the murder conviction ever altered or amended? The murder conviction was not altered or amended, but the sentence was amended and under Burton v. The sentence for the murder conviction was amended? No, that's correct. That's why I'm asking about the murder conviction. Yes. Let me tell you what my problem is with your presentation. It looks like your client's got two, maybe three convictions in state court, one of them for murder and one of them for robbery. Let's just focus on murder and robbery. Here's what it looks like to me, and you can tell me if I'm wrong because I gather these facts, maybe don't gather them correctly. It looks like the murder conviction was entered two decades ago and has never been amended, altered, changed, nothing. The robbery conviction looks like its sentence was changed, but what I gather is going on here is that you're seeking relief from the murder conviction. And so my question is, why would the fact that a challenge to the robbery conviction might be timely mean that a challenge to the murder conviction is timely? That's my problem. Okay. A few different reasons. First, Burton v. Stewart says that the judgment in a criminal case is the sentence. And therefore, when a defendant is re-sentenced- Yes. Was the defendant re-sentenced on the murder conviction? He was not. Yeah, that's the problem. But Edpus speaks of one judgment. But a state can enter as many judgments as it wants, and the federal time runs independently from each judgment. If the state covers five convictions in one judgment, fine, we got one federal time. But if the state enters more than one judgment, we got more than one federal time. Now, can you tell me, and maybe this is the critical question, can you tell me exactly what happened when the robbery conviction, when the robbery sentence was changed? Sure. Did the state then enter a new judgment on the murder conviction? It did not. Okay. That's, at this point, we now have multiple state judgments. But what it did do in re-sentencing Mr. Turner was to hold, first of all, a re-sentencing hearing. Yes, it was only on the robbery conviction, but it was a new sentence that was entered. That's a new judgment. But it's a new sentence on the robbery conviction. And in the re-sentencing order, the state court specifically referenced the transcript from the original sentencing hearing. And it was there that Mr. Turner received ineffective assistance. So what? Let me give you a hypothetical. Defendant is tried and convicted of murder. He's sentenced to life imprisonment. He is then, a year later, tried and convicted of robbery. And at the sentencing for robbery, the judge refers to the murder conviction and says, I'm taking that into account in choosing your sentence for robbery. He then imposes judgment for robbery. Does that reopen the time to seek federal collateral relief for murder? I think you would agree the answer is no. Well, the problem is, is that Mr. Turner received ineffective assistance of counsel at his original sentencing hearing. Here's the problem I have, because what you're trying to propose, to me it undermines the concept of the finality of a state court's decision. Because if we can review the entire conviction, when the petitioner was only granted relief on a specific issue, that seems to me that's problematic. And that's what you really want us to do. I understand you're saying there's this reference, but I don't think that's enough of a hook. Well, remember, what EDPA is trying to protect is the state's interest in its final judgment. So if a state decides that a defendant needs to be re-sentenced, it is the state itself that has disturbed the finality of its own judgment. So in that respect, our rule, the rule of Ferrera, the 11th Circuit rule, is completely consistent with the underlying purpose of EDPA. The other thing I would say is- It's just to me, I have the same problem Judge Easterbrook has, is because that has to do with the robbery. That's what was focused on, not the murder. But I understand, and Judge Easterbrook said that there are multiple judgments, but EDPA speaks of only one judgment. No, the state can convict somebody of as many crimes as it wants and enter as many judgments as it wants. There is one federal time per judgment. But if the state enters multiple judgments, there's a separate federal time from each one. That's why the critical question, it seems to me, is whether the new judgment entered on re-sentencing for robbery also includes the murder sentence. And if you were to follow the rule of Ferrera in the 11th Circuit, it would- No, I'm not asking about Ferrera. I'm asking about the facts. Does it include the murder sentence? No. Well- Do we have a copy of it? It's at docket 43. We've asked that it be made part of the record, and the district court has still not ruled on that motion. So we don't. Would you see to it that we quickly get, and ask the clerk's office to draw to our attention, a copy of the judgment entered, this was 2012, I think? Of course. And we've asked the district court to make it part of the record. The court just hasn't ruled on it. Look, it is a public document. We can take judicial notice of it. Just get it to us. This may be the critical piece of paper in the case. We need to see it. But again, I don't want to mislead you. It does not re-enter judgment on the murder conviction. Yeah. Okay. So, but our position is that you should follow Ferreira, because we do think that it's consistent with the text. Ferreira doesn't involve separate judgments. Quite the contrary. The holding of Ferreira is the time restarts. And oh, by the way, I'm going to ask this of your adversary. I don't see how Ferreira is relevant after the outcome of the Supreme Court in Magwood against Patterson. If... Magwood against Patterson holds that when the state enters a new judgment, that resets the number count for purposes of collateral review. I don't see why it doesn't equally reset the time count. There's nothing in the statute that makes the number count and the time count go separately. So we know this is the Supreme Court in 2010. So why should we care what the 11th Circuit said in 2007? Well, the 11th Circuit decision in Ferreira... Magwood is favorable to you. It is... I agree. This case is a slam dunk for you after Magwood if the state re-entered the murder judgment. Okay. Well, and I wish I could say that it did, and perhaps you'll read the order differently than I have, but I don't believe that it did. But nonetheless, the 11th Circuit did involve two different judgments. The 11th Circuit case in Ferreira did involve two different judgments, one on resentencing. And the Court very specifically said that brings up for review under the Supreme Court's decision in Burton v. Stewart all of the claims that one could have raised with respect to the original judgment. And that's because under Section 2254A, the state may... of a district court. And when a defendant is resentenced, Burton says, he is in custody pursuant to the judgment that is the product of the resentencing. Yeah, well... So that's essentially why we're asking... That's the question I've been asking. According to what judgment is Turner in custody for life for his murder conviction? And it looks like the judgment according to which he is in custody is the one entered in 1997. Well, let me try to come at this a different way. I think what you're really doing is looking at the application and trying to ascertain the statute of limitations on a claim-by-claim basis. And I think that that's inappropriate. The Supreme Court said in a case called Pace v. DeGiuliano, footnote 6, that there are four means by which the statute of limitations is calculated. Three of them are indeed calculated on a claim-by-claim basis. 2244D1B, dealing with the removal of governmental impediments. D1C, dealing with new rights made retroactive. And D1D, dealing with new factual predicates. But under section 2244D1A, the part of the statute that runs from when the judgment became final, the part of the statute at issue here, the court very specifically says that the statute should be calculated based on the application as a whole. And because Mr. Turner filed his application within one year of his resentencing, his application and all of the claims within that application are of necessity timely. So for all of those reasons, we think that that's the appropriate way, the way endorsed by the Eleventh Circuit of Ferreira, the way you should look at the statute. Now, if I could, I'd like to just briefly touch on the merits. At this stage, all we have to show is that Mr. Turner has a decent chance of success in the merits, and we've made that showing. This was a close case. The jury deadlocked over whether to recommend a sentence of life in prison without parole, and there's a reasonable probability that had Turner's counsel provided effective assistance of counsel, that deadlock could have been broken in his favor. According to ABA standards, then, in effect, counsel had a duty to investigate all reasonably available mitigating evidence and to hire, where appropriate, an expert to present mitigating evidence. Turner's counsel didn't do that. He didn't even consult an expert because he didn't know that if he didn't like the expert's opinion and didn't want to use it at trial, he didn't have to disclose it to the state. That plainly fell below objectively reasonable standards of performance. For trial counsel, equally important, counsel's performance was deficient. Lay witnesses testified about Turner's terrible upbringing, but an expert could have explained what effect that terrible upbringing had on Mr. Turner and, in particular, his reasoning and judgment abilities. Dr. Ferraro, Turner's post-conviction psychological expert, testified that Turner was, quote, Supplemental Appendix 150. Furthermore, a psychologist could have rebutted the state's jailhouse psychologist's testimony that Turner was a psychopath and a malignant narcissist, conditions that aren't even recognized in the DSM. And, of course, there was no expert to rebut that testimony. Now, you may or may not think that Mr. Turner will ultimately prevail on the merits, but we've at least established that he has a decent chance of success on the merits and, therefore, a remand is appropriate. A reserved remainder might die from rebuttal. Thank you, Mr. Baum. Ms. Loy. May it please the Court. Modification of Turner's robbery sentence does not restart the clock on all of Turner's claims. Turner was always in custody following his conviction on the murder sentence and the life without parole sentence, which brought finality to the case in which he could then proceed with direct review, which he did, and this was in accordance with Berman v. United States, which Burton refers to in determining that a judgment includes both the conviction and the sentence. Jimenez v. Quarterman provides a narrow holding that if, in collateral review, a state court grants an out-of-time direct review, the clock can restart. That did not occur here, and, in fact, he received minimum relief on a collateral conviction that had nothing to do with his murder conviction or his life without parole sentence. And, indeed, Indiana would never have given him a complete direct review following the resentencing. To restart the clock, as Turner urges, it would also render 2244d too superfluous when it talks about collateral review and specifically talks about it tolling the clock, not restarting the clock. There's no compelling reason for this Court to find a new rule and do so contrary to its decisions in Davis v. U.S. and Lozano v. Frank. Counsel, I have for you the same principle question I had for Mr. Paul. What does the judgment on changing the robbery sentence do? Does it also constitute a new judgment on the murder conviction? No, Your Honor. The murder conviction and the life without parole. Can you and Mr. Paul cooperate to get us a copy of that document as quickly as possible? Yes, Your Honor. I wrote it down. We really need to know what it says. I wrote it down the minute you asked for it, so yes. And I take it that had he sought to challenge the robbery conviction, where he was resentenced less than a year before he filed his federal petition, you wouldn't have any quarrel with timeliness. I think that would be a completely different question, Your Honor. Yes. Turner challenges, if you find that his petition was timely, he also challenges ineffective assistance of counsel. His primary claim is that counsel did not seek a psychological examination of Turner before the penalty phase began and presented that testimony. Trial counsel made a very reasonable strategic decision. He did investigate Turner's background, and in fact he found four to five lay witnesses, family members, a man that Turner had worked for, and he had experience in other murder cases with other psychological evidence, and he also based his decision based on his interactions with Turner himself and determined that the better course was to provide both character, evidence of Mr. Turner through these lay witnesses and also give a description of the hardships that Turner faced during his childhood. The fact that he did not know at the time that he did not have to divulge a psychological test, should he have gotten one and it didn't look favorable to trial counsel, does not mean that his decision was not a reasonable one, given the factors that he based his decision on. And even if we look at Dr. Ferraro's report, Dr. Ferraro gives more than enough information to not challenge the state's evidence but rather confirm that the only appropriate sentence in this case was life without parole. Dr. Ferraro was very clear about the numerous negative traits that Turner possessed, including that he harbors anger and hostility, he lacks insight, he's aggressive, he acts out, he externalizes blame and responsibility, he resents social standards, he has lapses in reasoning and judgment, he engages in inappropriate behavior and is highly resistant to change. Trial counsel's instinct was a correct one, that if he had psychological testing, it was sure to give information and evidence that would not have been favorable to Turner, which gives both trial counsel's decision and his performance was not deficient in that his presentation of the penalty phase information without Dr. Ferraro's testimony was not prejudicial to the defendant. If there are no further questions, Your Honors, Justice Easterbrook brought up Magwood, and I would just urge this court to also look at your decision discussing Magwood and Sook's v. United States, in which this court decided in that case that Magwood did not change this court's earlier opinion in the holding in dollar. If there are no further questions, thank you. Thank you, Snowy. Mr. Paul. I can be very brief. Our essential claim is that when Mr. Turner was resentenced, a new final judgment was entered, and a final judgment subsumes all of the claims in the case. That's completely consistent with Ferraro. The court reopened what was final and made it final no longer, entering a new judgment. On the merits, it is only our burden to establish that this case is worth remanding, and we've done that. It was simply not reasonable for trial counsel not to even talk to a psychologist in this case, and that was prejudicial and could have tipped the balance in this case where the jury deadlocked. Turner was not effectively represented at his original sentencing hearing. He should get a chance to make his case on the merits to the district court. We therefore respectfully ask the court to reverse and remand. Thank you. Thank you to both counsel. Mr. Paul, you have the additional thanks of the court for accepting this appointment. Thank you, Your Honor.